IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 41191-5-III |
| | ) | |
| A.D.† | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

MURPHY, J. — C.K. appeals from an April 2025 order of disposition on dependency as to placement of her daughter, A.D. Because this court can no longer grant effective relief, and the appeal does not present an issue of continuing and substantial public interest, we dismiss the matter as moot.

## FACTUAL AND PRODECURAL BACKGROUND

On the afternoon of April 13, 2024, A.D. was taken into protective custody. A.D.'s father, J.D., had been killed earlier that day and A.D.'s mother, C.K., had been arrested and was under investigation for J.D.'s murder. At the time she was taken into custody, A.D. was in the care of C.K.'s husband, I.K.

On April 16, the Department of Children, Youth, and Families (DCYF) filed a dependency petition for A.D. on the basis that "the child has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in

---

† To protect the privacy interests of the minor child, A.D., we use their initials and the initials of their family members throughout this opinion. Gen. Order for Ct. of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective Sept. 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

circumstances which constitute a danger of substantial damage to the child's psychological or physical development." Clerk's Papers at 3. At a shelter care hearing held on April 18, C.K. agreed to placement with A.D.'s paternal grandmother, T.S., and step-grandfather, D.S.

Less than three months later, C.K. filed a motion to change A.D.'s placement. It was C.K.'s preference that A.D. live with C.K.'s husband, I.K., because A.D.'s siblings, with whom A.D. had established relationships, were living with I.K. C.K. also claimed that A.D. did not have a meaningful relationship with her paternal grandparents, nor could the paternal grandparents remain neutral given the circumstances. C.K. submitted notes from a social worker who confirmed a strong relationship between A.D., I.K., and A.D.'s siblings. I.K. also filed a declaration in support of A.D. returning to his home.

DCYF opposed the motion to change placement. A.D.'s court-appointed special advocate submitted a declaration in opposition to the change in placement, informing the court that A.D. had been doing well in her placement with the paternal grandparents, who agreed to support and facilitate visits between A.D., her siblings, and I.K.

On September 30, 2024, a superior court commissioner determined it was not in A.D.'s best interest to be moved from the care of her paternal grandparents and denied C.K.'s motion to change A.D.'s placement. The commissioner also granted I.K. unsupervised visits with A.D. to resemble the visitation A.D. had with I.K. prior to

A.D.'s removal from I.K.'s home. A superior court judge later denied C.K.'s motion for revision of the commissioner's decision.

An agreed order of dependency was entered in February 2025. The sole contested issue anticipated for the disposition hearing was A.D.'s placement. Declarations were filed by various individuals on the issue of placement. After a four-day disposition hearing in March 2025, the superior court ruled it was in A.D.'s best interest to remain with her paternal grandparents. The court found good cause to depart from C.K.'s placement preference, in part because of concerns with C.K.'s credibility.

C.K. timely appealed from the disposition order. She assigned error to the court's placement decision, its conclusion that concerns about her credibility constituted good cause to depart from her parental preference, and that the court had improperly balanced statutory factors, including sibling relationships.

During March 2026, the superior court in a separate proceeding conducted a trial on competing guardianship petitions—one filed by A.D.'s paternal aunt and uncle, Jo.D. and T.D., and the other filed by I.K. C.K. consented to a guardianship, but she requested I.K. be appointed as guardian rather than Jo.D. or T.D. The superior court later entered extensive findings of fact and conclusions of law, denied I.K.'s petition, granted Jo.D. and T.D.'s petition, and appointed Jo.D. and T.D. as A.D.'s guardians. The court established a plan through which A.D. would fully transition into Jo.D. and T.D.'s home

while providing for regular in-person and telephonic contact between A.D. and her siblings.

On June 2, 2026, this court directed the parties to address whether the appeal should be dismissed as moot given the guardianship decision. On June 10, the juvenile court dismissed A.D.'s dependency proceeding. On June 15, DCYF filed a memorandum arguing for dismissal of this appeal. C.K. did not respond to the court's June 2 letter.

## ANALYSIS

Ordinarily, this court will not review an issue that is moot. *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). An issue is moot if the court can "no longer provide effective relief." *Id*. Courts generally will not review moot questions unless the issue presented is one of continuing and substantial public interest. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). To determine whether an issue is of continuing and substantial public interest, the court looks at whether: (1) the nature of the issue is public or private, (2) an authoritative determination is desirable to provide future guidance to public officers, and (3) the issue will likely recur. *In re Marriage of Horner*, 151 Wn.2d 884, 891-92, 93 P.3d 124 (2004).

C.K. asks this court to vacate the dependency disposition order and remand to juvenile court for entry of findings and conclusions consistent with the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of

a Parent and Child Relationship, chapter 13.34 RCW. She argues the trial court abused its discretion when it found she lacked credibility and found good cause to place A.D. with A.D.'s paternal grandparents against C.K.'s preference. C.K. further maintains the court did not address the statutory preference to place A.D. with her siblings.

The relief sought by C.K. is no longer available. The juvenile court has dismissed the dependency proceeding as required by statute. *See* RCW 13.34.145(12) ("If a guardianship or permanent custody order has been entered, the dependency shall be dismissed.") A.D. is now subject to a superior court guardianship order that governs her placement and provides for ongoing sibling contact. Any decision by this court in addressing the now-superseded dependency disposition order would have no practical effect on A.D.'s current custody, placement, or sibling relationships. This appeal is therefore moot.

We further conclude that this appeal does not warrant review under the public interest exception. Whether a parent's lack of credibility can constitute good cause to depart from the statutory placement preference under RCW 13.34.130(2) and .260(1), and how a court should weigh sibling relationships when making a placement decision under RCW 13.34.130, are governed by well-settled principles. The paramount consideration in a dependency placement is the best interest of the child. *In re Dependency of J.B.S.*, 123 Wn.2d 1, 11, 863 P.2d 1344 (1993). Placement decisions

are reviewed for abuse of discretion. *In re Dependency of R.W.*, 143 Wn. App. 219, 223, 177 P.3d 186 (2008). Although parents have a fundamental liberty interest in the care, custody, and management of their children, that fundamental right is not absolute. *In re Welfare of D.E.*, 196 Wn.2d 92, 102, 469 P.3d 1163 (2020); *In re Welfare of Young*, 24 Wn. App. 392, 395, 600 P.2d 1312 (1979). When the rights of the parents and the welfare of their children are in conflict, the welfare of the children must prevail. *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). The trial court must also "consider the child's existing relationships and attachments when determining placement." RCW 13.34.130(3).

These established standards provide authoritative guidance. The questions C.K. raises are fact-specific applications of those standards to the evidence presented at the March 2025 disposition hearing. They are not likely to recur in a form that would benefit from further appellate review of this particular and now-superseded order. *See State v. Beaver*, 184 Wn.2d 321, 331, 358 P.3d 385 (2015). The harm from issuing an essentially advisory opinion outweighs any benefit to the public interest. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 450, 759 P.2d 1206 (1988).

No. 41191-5-III
*In re Dependency of A.D.*

CONCLUSION

Because the appeal is moot and does not present an issue of continuing and substantial public interest, we dismiss it. We express no opinion on the merits of the juvenile court's placement decision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Murphy, J.

WE CONCUR:

Staab, C.J.

Lawrence-Berrey, J.

7